## Case No. 2,414.

### The CARL SCHURZ.

[2 Flip. 330;[1]  8 Cent. Law J. 147.]

District Court, W. D. Tennessee. Jan. 27, 1879.

SALVAGE—COMPENSATION—LOSS BY DEPRECIATION IN VALUE.

1. The court will not allow the whole net proceeds in the registry as compensation to the salvor, even when his actual expenditures exceed the amount of the fund, except in cases where the owner abandons the property and neglects to reclaim it by appearance in the suit.

[See Llewellyn v. Two Anchors & Chains, Case No. 8,428; The Zealand, Id. 18,205.]

2. Where the proof showed that a sunken vessel, after being raised, was worth $1,700, but being sold pendente lite she brought only $792; and that the libellant actually expended $568.95, under circumstances which would ordinarily have justified an allowance of one-half the property, the court allowed only one-half the net proceeds in the registry.

3. A salvor must bear his share of the loss by depreciation in value. He is sub modo a joint owner, and in the absence of an express contract, he cannot recover on any theory of a debt due either by the owner or the property, with a lien to be satisfied, at all hazards, to the full extent of the proceeds in the registry.

In admiralty.

H. C. Warrinner, for libellant, cited: Post v. Jones, 19 How. [60 U. S.] 150, 161; Rutter v. The Ferris [Case No. 12,178]; 4 Abb. Nat. Dig. p. 103, pl. 104; The Zealand [Case No. 18,205]; Spencer v. The Chas. Avery [Id. 13,-232]; Two Hundred Ten Barrels of Oil [Id. 14,297]; The Waterloo [Id. 17,257]; The Rising Sun [Id. 11,858]; The Jubilee, 3 Hagg. Adm. 43, note; The Bastiaan, 5 C. Rob. Adm. 323; The Wm. Hamilton, 3 Hagg. Adm. 168; Derelict Unknown, Id., note; The Susan [Case No. 13,630]; 2 Pars. Ship. & Adm. 263, 281, 310, 312.

R. Dudley Frayser, for claimants, cited: The Minnie Miller [Case No. 9,638]; Nickerson v. The John Perkins [Id. 10,252]; The Waterloo [Id. 17,257]; The Camanche, 8 Wall.

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

[75 U. S.] 448–473; Llewellyn v. Two Anchors & Chains [Case No. 8,428].

HAMMOND, District Judge. The question reserved at the hearing grows out of the following state of facts: The libellant raised the sunken vessel at an actual expenditure, as he testifies, of $568.95, for labor of hands employed by the day, hire of flats, crabs, jacks, and other tools employed in the work, and the compensation of a diver and his assistants. The vessel was not derelict, her owner and captain remaining all the time during the work with the boat. I think there is no doubt that the preponderance of the proof shows that too much time was expended by the libellant in the work, and that it could and should have been accomplished at a much less cost than the libellant incurred, but it is difficult to say from the proof at how much less it could have been done. The estimates made by the witnesses, under the circumstances they detail, are entirely unsatisfactory. It was mere guessing on their part. The proof establishes the fact that the boat, which was a very small steamboat, converted from a barge, was worth, at the time of the disaster, not more than $2,000, and that the repairs put on her after she was raised cost from $200 to $300; that is, the repairs necessary to cover the damage done by the sinking and raising, and not taking notice of the repairs which were in the nature of betterments. This would make her value in the hands of the salvor, after she was raised, not less than $1,700. When we consider the danger of a total loss from the perilous position in which the vessel was placed by the disaster, the difficulties in the use of crude appliances for performing the service which seem to have been the best that were available, the cold weather and running ice during part of the time, and the actual expenditure of money, as above stated, which is found by aggregating from the libellant's account, as he proves it, the sums paid out by him, and leaving out of view the other charges made for his own services and hire of his own tools, I think one-half of the value of the boat, which was comparatively of small value at best, not too much to be allowed as compensation to the libellant. This would be very nearly the exact amount he claims by the account which he tenders as a statement of the expenditures he made and the value of his services as estimated by himself for the purpose of aiding the court in fixing the allowance of salvage, if we include the charges for his own services and the use of his own tools, and are to make the allowance on the basis of value as shown by the proof in the case, say on a value of $1,700. But the libellant, having seized the vessel by process in this case, on his application, some ten or fifteen days afterwards, she was sold pendente lite, while almost imbedded in the ice, at an unfavorable time and under unfavorable circumstances, so that she only brought $792, which is the sum in the registry to answer costs and for distribution between the salvor and the owners. It is not certain that if the property had been kept in the control of the marshal until more favorable weather for a sale it would have brought any more. So far as the proof is concerned, it is all speculation, but I think it is fairly inferable from the circumstances shown by the proof that, owing to the inauspicious conditions, the vessel has been sold for much less than otherwise she would have brought.

The libellant claims that his compensation should be fixed on the value as shown by the proof and not the sale, or else that the proportion should be so increased as to give him a larger amount than one-half the net proceeds in the registry, and that, under no circumstances, should he be allowed less than his actual expenditures of money. This would exhaust the whole fund, leave nothing for the owners, and throw all the loss of the unfortunate sale on them.

I do not think the element of time between the raising and selling of the vessel is at all material. It is not probable that she would have sold for any more on the day she was raised than she did fifteen days subsequently, and, therefore, it is merely another mode of claiming on the actual value, as shown by the proof, to argue that a salvor is entitled to recover on the value at the time of the service and not on any subsequent value. For all practical purposes the date of the service and date of the sale are the same in this case.

The question remains whether the court can look beyond the fund in its hands in estimating the value of the property. If the depreciation grows out of the misconduct of the parties in possession, whether it be the owner or the salvor, I have no doubt that misconduct may enter as an element into the judgment of the court in making the allowance; but there is no misconduct here, unless it may be that the action of the libellant in pressing a sale at an unfavorable time may be so considered. There is nothing in the proof to show whether this was bad conduct or not, for it may be the expense of keeping the property, or the danger of losing it by delay, made a speedy sale a necessity. Let this be as it may, I shall treat the case as one without fault on either side in respect of the sale, because the proof does not show otherwise.

Neither do I think it just to treat the disastrous sale as the result of the failure of the owners to bond the property, as it is called. There is nothing to show that they could have given a stipulation for her value, and if there were, it is not a right the libellant has to a bond, but it is entirely optional with the owners whether they give bond or leave the property with the court. In cases where the owner abandons his property to the salvors, makes no claim, or is unreasonably long in asserting his rights,

the court may, undoubtedly, decree the whole to the libellant. The Zealand [Case No. 18,-205]; Two Anchors & Chains [Id. 8,428].

It is very earnestly insisted that the element of "reward" and not entirely that of compensation, is the rule for allowance of salvage. In meritorious cases on the high seas, and perhaps there may be cases on the rivers, this element is often controling. Here we have a case of a steamboat snagged at her landing in this port, impaled upon a sunken wreck at the shore, and tied by her cables near her usual landing place. The salvor goes to her relief at the request of the captain, and after much hard work and unnecessary delay he succeeds in getting her afloat and pumping her out. It does not seem to me that it is a case calling for anything in the way of reward as understood in the admiralty courts, but if it were, it would be going to an unreasonable length to reward a salvor, however meritorious, with the whole of the property. As was said by the learned judge in The Waterloo [Case No. 17,257], this would be a return to the barbarous practice of giving the finder all he finds. I do not find any case where the court allows all the property to go to the salvor unless the owner is either unknown, or has voluntarily abandoned the claim he has to the property saved.

A salvor, in the view of the maritime law, has an interest in the property; it is called a lien, but it never goes, in the absence of a contract expressly made, upon the idea of a debt due by the owner to the salvor for services rendered, as at common law, but upon the principle that the service creates a property in the thing saved. He is, to all intents and purposes, a joint owner, and if the property is lost he must bear his share like other joint owners.

This is the governing principle here. The libellant and the owners must mutually bear their respective share of the loss in value by the sale. If the libellant has been unfortunate and has spent his time and money in saving a property not worth the expenditure he made, or if, having saved enough to compensate him, it is lost by the uncertainties of a judicial sale for partition, so to speak, it is a misfortune not uncommon to all who seek gain by adventurous speculations in values. The libellant says in his testimony that he relied entirely on his rights as a salvor. This being so he knew the risk he ran and it was his own folly to expend more money in the service than his reasonable share would have been worth under all circumstances and contingencies. He can rely neither on the common law idea of an implied contract to pay for work on and about one's property what the work is reasonably worth with a lien attached by possession for satisfaction, nor upon any notion of an implied maritime contract for the service, with a maritime lien to secure it, as in the case of repairs, or supplies furnished a needy vessel, or the like. In such a case the owner

would lose all if the property did not satisfy the debt, when fairly sold. But this doctrine has no place in the maritime law of salvage. It does not proceed upon any theory of an implied obligation, either of the owner or the res, to pay a quantum meruit, nor actual expenses incurred, but rather on that of a reasonable compensation or reward, as the case may be, to one who has rescued the res from danger of total loss. If he gets the whole, the property had as well been lost entirely, so far as the owner is concerned. Smith v. The Joseph Stewart [Case No. 13,-070]. I think the public policy of encouragement for such service does not, of itself, furnish sufficient support for a rule which would exclude the owner from all benefit to be derived from the service. The property is saved for him, not the public, and he cannot be said to have impliedly authorized his whole property to be exhausted in saving it, particularly where he has not abandoned it, and it is not derelict.

The property and the owner would generally be at the mercy of the salvor, if such a doctrine be established, and the temptation to so conduct the service as to absorb the whole property, very great.

After the payment of costs let the proceeds in the registry be equally divided between the libellant and the claimants.

I take pleasure in saying that Judge BROWN, of the Eastern District of Michigan, now with us, concurs in this opinion.